# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. WATLINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Joan B. Gottschall |
| v. ) | |
| ) | Case No. 09 C 4367 |
| CHICAGO TRANSIT AUTHORITY, ) | |
| a Municipal Corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Elizabeth Watlington brings this action against her former employer, the Chicago Transit Authority ("the CTA"). She alleges that the CTA discriminated against her on the basis of her race when it passed her over for a promotion in favor of a less-qualified white male employee. She also alleges that the CTA suspended her in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The CTA now moves for summary judgment, arguing that Ms. Watlington lacks factual support for both her failure to promote and her retaliation claims. For the reasons stated below, the court denies the CTA's motion as to the failure to promote claim, but grants the motion as to the remaining claims.

### I. LOCAL RULE 56.1

Before discussing the background facts relevant to the CTA's motion, the court first notes deficiencies in both parties' summary judgment filings. The CTA's memorandum of law contained no fact section at all, and Ms. Watlington's memorandum contained only a very brief fact section without any citations to the record. The court can only assume the parties meant for their Local Rule 56.1(a)(3) and (b)(3) statements to describe the underlying facts and refer the court to the relevant support in the record. But courts in this district have repeatedly made clear

that Local Rule 56.1 statements are not substitutes for statements of facts contained in the parties' memoranda of law. *See, e.g., Bixby v. J.P. Morgan Chase Bank, N.A.,* No. 10 C 405, 2012 WL 832889, at *1 (N.D. Ill. Mar. 8, 2012); *Courtney v. Chi. Police Dep't*, No. 10 C 2782, 2011 WL 1118874, at *3 (N.D. Ill. Mar. 24, 2011); *Cleveland v. Prairie State Coll.*, 208 F. Supp. 2d 967, 972-73 (N.D. Ill. 2002). Omitting a narrative statement of facts from a brief makes the court's task in organizing and setting forth the undisputed facts significantly more difficult and time consuming, and it also allows a party to circumvent the page limit on briefs imposed by Local Rule 7.1 and this court. *See RJB Prop. Inc. v. Bd. of Educ. of City of Chi.*, No. 04 C 5226, 2006 WL 224101, at *1 (N.D. Ill. Jan. 24, 2006).

The CTA's omission of a factual background section forces the court to rely on the CTA's Rule 56.1 statement. That statement is, at best, carelessly written and, at worst, unintelligible. For example, Paragraph 22 (which mysteriously follows Paragraph 11) states: "As to analyzing that data which the buses were reporting back, taking that data and make it into action plan either based on historical data or later based on real live data, Stubbe at Champaign Urbana had done those types of things, on a smaller system, but had that technical knowledge." This is not comprehensible English. The confusion continues from there. Paragraph 35 (perhaps suffering an existential crises) states simply: "There is no paragraph 35." Paragraph 36 is then voiced in the first person: "While all Bus Service Management ('BSM') managers, including transportation managers I and II, use technology in their workday, my role has differed from that of the other BSM managers in that I have taken the role as the BSM/Bus Operations Technology Liaison." Instead of simply laying out the material facts, the CTA's statement meanders in time, tense and format, making it difficult for the court to achieve a basic understanding of the relevant events. By failing to include a fact section in its memorandum of law and submitting a largely

incoherent Rule 56.1 statement, the CTA forced this court to expend unnecessary time and resources in resolving its motion.

Although Ms. Watlington included a factual background section in her memorandum, she ran afoul of the rules by failing to include any citations to either her Rule 56.1(b)(3) statement or the transcripts and other evidence she appended thereto (this court's Standing Order requires citation to both). That omission also frustrates the court's effort to indentify and set forth the undisputed facts. *United States Neurosurgical, Inc. v. City of Chi.*, No. 02 C 4894, 2006 WL 752970, *3-4 (N.D. Ill. Mar. 21, 2006) (admonishing counsel for referring to facts in their memoranda without citing to the appropriate paragraph in their Local Rule 56.1 statement).

Because this is a relatively straightforward case, the court is able to identify and analyze purportedly undisputed facts despite the deficiencies noted above. That being said, the court instructs both parties to more carefully follow the Local Rules and the court's standing orders in the future. The court warns the CTA, in particular, that the court will immediately strike any future filing that is either noncompliant with the rules or unnecessarily draining on the court's resources.

## II. BACKGROUND

The following facts are undisputed unless otherwise indicated.

Ms. Watlington, who is African-American, began her employment with the CTA on May 1, 1989. (ECF No. 26-2 ¶ 5.) On July 30, 2007, the CTA announced a vacant position for a Transportation Manager II. (Pl. Rule 56.1(b)(3) Statement (hereinafter "Pl. St.") ¶ 80.) At the time of that announcement, Ms. Watlington was a Transportation Manager I. She applied for the Transportation Manager II position. Ms. Watlington met the qualifications for a Transportation

Manager II as listed in the CTA's position vacancy announcement.[1] (Pl. St. ¶ 80.) She also had a reputation as a good manager. (Pl. St. ¶ 79.)

The CTA denied Ms. Watlington the promotion and instead promoted another Transportation Manager I, Michael Stubbe, who is white. (Pl. St. ¶ 90.) Mr. Stubbe had not applied for the promotion, but the CTA offered it to him anyway. (Pl. St. ¶ 87.) Mr. Stubbe had been with the CTA since December 2006. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 24.) Before joining the CTA, Mr. Stubbe had worked for the Champaign Urbana Mass Transit System for over eleven years. (Def. St. ¶ 18.) There, Mr. Stubbe gained technical experience in what he called a Computer Aided Dispatch/Automatic Vehicle Location System and several integrated software applications. (ECF No. 49 at 97.) After joining the CTA, Mr. Stubbe was very involved in CTA's own automated bus tracking system, commonly known as "Bus Tracker." (Def. St. ¶ 8.) Bus Tracker allows CTA buses to automatically send data about their locations to computers monitored by supervisors, who then analyze the data and make real-time decisions about scheduling. (Def. St. ¶ 9-10.) The CTA uses Bus Tracker to avoid bus service delays and bus "bunching," which occurs when there is insufficient space between buses. (Def. St ¶ 6-9.) Mr. Stubbe had more technical experience with automated bus tracking than Ms.

---

[1] The CTA disputes the fact that Ms. Watlington was qualified for the Transportation Manager II position, but fails to provide factual support for that dispute. The CTA cites only to the following portion of Mr. Mooney's deposition transcript. (ECF No. 49 at 49, ll. 4-19.)

> Q. Looking at her resume which you have already done and based on your familiarity with Ms. Watlington in your personal opinion would she meet the qualifications listed in Management Opportunity Bulletin Exhibit I …?
> A. Yes, unless there was something on her attendance or behavior record that would knock her out but I would not know that.
> Q. So is it your testimony that unless something popped up with respect to an inconsistent attendance record or an incident on her behavioral record that she would be qualified to fill the Transportation Manager Two position that is the subject of Exhibit I, is that correct?
> A. Yes.

That record portion does not establish a dispute as to Ms. Watlington's qualification. (Def. Reply to Pl. St. ¶ 80.)

4

Watlington. (Def. St. ¶ 23.)[2]

The CTA claims that it promoted Mr. Stubbe instead of Ms. Watlington because Mr. Stubbe had superior technical experience, which was a priority for the CTA. Ms. Watlington claims that the CTA's failure to promote her was discriminatory. On December 18, 2007, Ms. Watlington filed with the EEOC her charge of discrimination based on race. (Def. St. ¶ 5.)

About three months later, on March 4, 2008, the CTA temporarily suspended Ms. Watlington. The CTA claims that the suspension was discipline for Ms. Watlington's use of inappropriate language over the CTA's radio system. Specifically, on February 29, 2008, Ms. Watlington's general manager, Carlton Rutherford, reported on the radio that four buses were bunching in downtown Chicago. (ECF No. 26-4 at 80-83.) One of Ms. Watlington's subordinates, Supervisor "Z. Jones," responded to that radio call by communicating that he would intercept the buses and make whatever corrections were necessary to space them appropriately. (*Id.*) Ms. Watlington then stated on the radio that Z. Jones was the only supervisor in the downtown area, and he would not "baby-sit." (*Id.*) Ms. Watlington's supervisor, Leroy Tate, testified that he regarded Ms. Watlington's statement as insubordinate and her use of the term "babysit" as inappropriate. (*Id.*) He also testified that, if Ms. Watlington's staff was overextended, she should have traveled to the downtown Chicago area herself to address the situation. (*Id.*)

Ms. Watlington does not contest that the "babysitting incident" took place as described above. She claims, however, that the suspension was retaliation for her filing of the charge of

---

[2] Ms. Watlington denies that Mr. Stubbe had superior technical experience with automated bus tracking, but she fails to cite any factual support for that dispute. Ms. Watlington cites only (1) her Resume, which if anything supports the CTA's contention that she lacked technical experience with automated bus tacking, and (2) her *entire* deposition transcript and all of its exhibits. The court will not review Ms. Watlington's entire 300 page deposition transcript and exhibits in an attempt to locate factual support.

5

discrimination, and that the CTA used the "babysitting" incident as pretext. On March 7, 2008, Ms. Watlington filed with the EEOC her retaliation charge. (Def. St. ¶ 5.)

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether factual issues exist, the court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

Rule 56 mandates, however, that the party opposing a motion for summary judgment may not rest on the pleadings or mere speculation. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). It must instead affirmatively demonstrate, through the presentation of admissible evidence, that there is a genuine issue of material fact to be resolved at trial. *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). If there is a genuine dispute as to a material fact, the court must view the relevant evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).

### IV. ANALYSIS

Ms. Watlington claims that the CTA violated Title VII, Section 1981 of the Civil Rights Act of 1866, and Section 1983 of the Civil Rights Act of 1871 when it failed to promote her and when it temporarily suspended her. The CTA has moved for summary judgment on all of those claims. It argues that Mr. Stubbe was more qualified for the promotion than Ms. Watlington, and

6

also that there was a legitimate, non-discriminatory basis for her temporary suspension.

**A. Failure to Promote as Racial Discrimination Under Title VII (Count I)**

In her Complaint, Ms Watlington alleges that the CTA declined to promote her to the Transportation Manager II position based on her race. Under Title VII, employers may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). To withstand the CTA's motion for summary judgment on her Title VII race discrimination claim, Ms. Watlington "must either point to enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue (the 'direct' method) or establish a prima facie case under the *McDonnell Douglas* formula (the 'indirect' method)." *Egonmwan v. Cook Cty. Sheriffs Dep't*, 602 F.3d 845, 849-50 (7th Cir. 2010). Although it is not entirely clear from her brief, Ms. Watlington appears to contend that she can establish race discrimination under either method of proof.

Under the indirect method of proof, Ms. Watlington must first establish a prima facie case by showing that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was rejected for the position; and (4) the position was given to someone outside of her protected class who was similarly or less qualified that she was. *Hobbs v. City of Chi.*, 573 F.3d 454, 460 (7th Cir. 2009). If Ms. Watlington establishes those four prima facie elements, the "presumption of discrimination created by establishing a prima facie case shifts the burden to the defendant to produce a legitimate, noninvidious reason for its actions." *Id*. (citations and quotations omitted). If the CTA rebuts Ms. Watlington's prima facie case, the burden shifts back to Ms. Watlington to establish that the CTA's proffered reasons are merely

7

pretext for discrimination. *Jackson v. City of Chi.*, 552 F.3d 619, 622 (7th Cir. 2009). As with all Title VII cases, Ms. Watlington bears the ultimate burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

For purposes of this summary judgment motion, the CTA does not dispute the first three prima facie elements, namely, that Ms. Watlington is a member of a protected class, was qualified for the position, and was denied the position. Instead, the CTA argues that Ms. Watlington has failed to establish the final element: that the position was ultimately given to someone who was similarly or less qualified than she was. The CTA argues that the person who received the promotion, Mr. Stubbe, was *more* qualified than Ms. Watlington. Although it is true that the record indicates that Mr. Stubbe had more experience with automated bus tracking systems than Ms. Watlington, there remains a dispute about whether he was similarly or less qualified.

Three witnesses gave testimony supporting Ms. Watlington's contention that Mr. Stubbe less qualified. Gwendolyn Davis, who worked as a supervisor clerk with the CTA until her retirement in 2010, observed Mr. Stubbe in his Manager I position and described him as generally inexperienced and occasionally ineffective. (ECF No. 38-2 at 13-14-26.) DeLois West, who worked as a manager at the CTA during the relevant time period, described Mr. Stubbe as insufficiently experienced in the area of operations. (ECF No. 38-4 at 12-14.) Finally, Debra Hardin, another CTA manager, described Mr. Stubbe as lacking experience in personnel management and "garage level" operations. (ECF 38-5 and 50-51.) Because Ms. Watlington has pointed to factual support for her contention that Mr. Stubbe was similarly or less qualified, the court cannot resolve this issue on summary judgment. Ms. Watlington has, therefore, established her prima facie case of discrimination.

The burden thus shifts to the CTA to produce a legitimate, noninvidious reason for its actions. The CTA has advanced no argument in that regard. The CTA's motion, memorandum of law, and reply contend only that Ms. Watlington cannot establish a prima facie case of discrimination. There is no argument in the alternative that, even if she establishes a prima facie case, there was some legitimate reason for the CTA's failure to promote. Because Ms. Watlington has made out a prima facie case of discrimination and the CTA has failed to meet its burden in establishing a legitimate non-invidious reason for its failure to promote, the court denies the CTA's motion for summary judgment as to Count I. The court need not address whether Ms. Watlington's claim can withstand the motion for summary judgment by the direct method of proof.

## B. Retaliation Under Title VII (Count II)

Ms. Watlington also alleges that the CTA violated Title VII when it suspended her in retaliation for her filing a claim of discrimination with the EEOC. The CTA contends in response that Ms. Watlington was suspended because she was insubordinate and used an inappropriate term over the CTA's radio.

To make out a prima facie case of retaliation via the indirect method, Ms. Watlington must establish that (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's expectations; (3) she suffered an adverse action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007).

In this case, it is undisputed that Ms. Watlington engaged in a statutorily protected activity and that she suffered an adverse employment action. The parties dispute, however, the

9

effect of the "babysitting incident" on Ms. Watlington's ability to establish the final two elements. The CTA contends that Ms. Watlington's use of the term babysitting over the radio and her general insubordination during that incident show that she was not meeting her employer's reasonable expectations. Ms. Watlington argues that her use of the term babysitting cannot establish that she failed to meet the CTA's reasonable expectations because it was common and acceptable among CTA employees to use that term. She also contends that her suspension on that basis shows that the CTA treated her less favorably than similarly situated employees outside of her protected class who regularly used that term.

The problem with Ms. Watlington's argument, however, is that she fails to point to a similarly situated comparator. In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008) (internal quotations and citations omitted). In cases where the plaintiff alleges that she suffered disparate *discipline*, the plaintiff must show that a comparator (1) dealt with the same supervisor, (2) was subject to the same standards, and (3) engaged in misconduct of comparable seriousness. *Coleman v. Donahoe*, 667 F.3d 835, 851-52 (7th Cir. 2012).

In this case, Ms. Watlington points to a few instances in which other CTA employees used the term babysitting over the radio, but she fails to provide the court with sufficient information to conclude that those employees were comparators. For example, the closest she comes in establishing a comparator is Eugene Thurman, who was a Transportation Manager II.

Delois West testified that Mr. Thurman regularly used the term babysitting over the radio. (ECF No. 38-4 at 77-79.) It is unclear from the cited transcript, however, whether Mr. Thurman dealt with the same supervisors or was subject to the same standards. Ms. Watlington also fails to address whether Mr. Thurman was outside the protected class. Beyond that, the court knows nothing about the incidents surrounding his uses of the term "babysitting," and thus cannot assess whether Mr. Thurman ever used the term in an insubordinate manner as Ms. Watlington purportedly did. Because Ms. Watlington has failed to provide the court with the above information, the court is left without the tools it needs to evaluate whether Mr. Thurman or any other employee is similarly situated. Accordingly, the court finds that Ms. Watlington has not met her burden of showing that she was treated less favorably than a similarly situated individual. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274 (7th Cir. 2004) (affirming summary judgment where plaintiff failed to identify "any coherent method of analysis" to evaluate the candidates she alleged were unlawfully promoted over her). Ms. Watlington cannot, therefore, establish a prima facie case of retaliation under the indirect method.

Ms. Watlington also argues, very briefly, that she should prevail under the direct method of proof because there is a convincing mosaic of circumstantial evidence from which one could reasonably infer retaliatory animus. The court disagrees. The Seventh Circuit, in *Silverman,* identified tree types of circumstantial evidence that could satisfy the direct method of proof: (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees [of plaintiff's race or national origin]"; (2) "evidence showing that the employer systematically treated other, similarly situated . . . employees [of a different race or national origin] better;" and (3) "evidence that the plaintiff suffered an adverse employment action and that the employer's justification is pretextual." *Silverman v. Bd. of Educ. of City of*

*Chi.*, 637 F.3d 729, 734 (7th Cir. 2011) (internal quotations omitted). As discussed below, Ms. Watlington fails to offer any such evidence.

First, Ms. Watlington presents evidence that the CTA temporarily suspended her just three months after she filed her charge of discrimination with the EEOC. Suspicious timing alone generally is not enough to create a triable issue in a retaliation claim. *See Palermo v. Clinton*, 457 F. App'x 577 (7th Cir. 2012). To meet her burden, Ms. Watlington must point to additional circumstantial evidence demonstrating that the CTA retaliated against her for the EEOC charge. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006). She has not done so.

Regarding the second category—evidence that the employer systematically treated other, similarly situated employees of a different race or national origin better—Ms. Watlington contends that she was treated less favorably than other employees, but she fails to show that those other employees were similarly situated or outside of her protected class.

As to the third type of circumstantial evidence—evidence that the employer's justification is pretextual—Ms. Watlington fails there too. Although she presented some evidence that the term "babysitting" was widely used at the CTA, she failed to address the other elements of her misconduct, namely that she was insubordinate and allowed a manager's request to go unmet. Ms. Watlington did not merely use the term "babysitting." She used it to prevent her subordinate Jones from assisting her supervisor Rutherford.

Accordingly, Ms. Watlington cannot point to a convincing mosaic of circumstantial evidence from which one could reasonably infer retaliatory animus, and her Title VII retaliation claim cannot survive summary judgment. Because her Title VII retaliation claim fails, her retaliation claims under Section 1981 and Section 1983 fail as well.

## C. Discrimination and Retaliation Under Sections 1981 and 1983 (Counts III through VI)

Aside from her Title VII claims, Ms. Watlington also alleges that the CTA's failure to promote and alleged retaliation violated Section 1981 of the Civil Rights Act of 1866 and Section 1983 of the Civil Rights Act of 1871.

### i. Section 1981

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. To prevail under Section 1981 for her failure to promote claim, Ms. Watlington must demonstrate that the violation of her right to make contracts was caused by an official custom or policy of the CTA. *Looper Maint. Serv., Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999). A custom or policy can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (citations omitted).

Ms. Watlington appears to allege that the CTA has a widespread practice of discrimination that is so permanent and well settled as to constitute a custom or usage with the force of law. She points to the following evidence in support of that contention: (1) William Mooney, Vice President of Bus Operations, testified that he has taken part in five to six depositions with respect to unfairness in hiring at the CTA; (2) William Mooney stated in a managers' meeting that he was the dictator in a dictatorship, and that if anyone did not like it,

they could leave; and (3) Salvador Ramirez, Ms. Watlington's EEOC representative, stated to another employee that there was nothing he could do regarding the failure to promote issue because people within the CTA were "beholding [sic] to Mr. Mooney."  (ECF No. 38-4 at 73.) The first two pieces of evidence do not alone support Ms. Watlington's contention that there was a policy or practice of discrimination at the CTA; five or six unproven accusations and one manager's remarks as to his authority do not establish anything.  The court cannot consider the final piece of evidence—regarding the EEOC representative's statement—because that statement is hearsay that would not be admissible at trial.  Thus, Ms. Watlington has failed to establish any factual dispute concerning the existence of an official custom or practice, and the CTA is entitled to summary judgment on her Section 1981 discrimination claim (Count V).

Ms. Watlington cannot prevail on her retaliation claim under Section 1981 either, because as discussed in part B above, her retaliation claim fails under Title VII. *See Alexander v. Wisconsin Dep't of Health & Family Servs.*, 263 F.3d 673, 681-82 (7th Cir. 2001) (courts analyze Title VII and § 1981 cases in the same manner).

### ii.  Section 1983

Ms. Watlington cannot prevail on either of her claims under Section 1983 because Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a cause of action under § 1983, "[f]irst, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A plaintiff can concurrently assert a Title VII cause of action with a § 1983 cause of action only if some law other than Title VII is the source of the right alleged to have been denied. *See Trigg v. Fort*

*Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985); *see also Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir.1994) (holding that Title VII plaintiff can bring a concurrent § 1983 claim as long as the latter claim is based on violation of a constitutional right and not a Title VII right). Because Ms. Watlington has failed to identify any federal right other than her Title VII rights, she cannot bring a concurrent § 1983 action.

### IV. CONCLUSION

For the above reasons, the court denies the CTA's motion as to Ms. Watlington's failure to promote claim (Count I), but grants it as to all other claims (Counts II through VI).


ENTER:


/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 14, 2012